IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 16-cv-00444-CMA-STV

TERRELL S. HUBBARD,

Plaintiff,

v.

TOM NESTOR,
MICHAEL YOWELL,
WADE ADAMS,
DERIK MATTSON, and
COLE BRITTON,

Defendants.

---

ORDER AFFIRMING RECOMMENDATION OF
UNITED STATES MAGISTRATE JUDGE SCOTT T. VARHOLAK

---

This matter is before the Court on the Recommendation (Doc. # 196) of United States Magistrate Judge Scott T. Varholak, wherein he recommends that this Court grant in part and deny in part Defendants' Motion for Summary Judgment (Doc. # 153). On August 6, 2019, Defendants filed an Objection (Doc. # 198) to the Recommendation, and Plaintiff filed a Response to the Objection on August 20, 2019 (Doc. # 199). For the reasons that follow, the Court affirms and adopts the Recommendation.

I.  **BACKGROUND**

The Magistrate Judge's Recommendation provides a recitation of the factual and procedural background of this dispute and is incorporated herein by reference. *See* 28

U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b). Accordingly, this Order will reiterate only what is necessary to address Defendants' objections.

This case arises out of Plaintiff's pretrial detention at the Lincoln County Jail (the "Jail") in Hugo, Colorado. Plaintiff alleges that while he was incarcerated at the Jail, Defendants violated his civil rights in various ways. Specifically, Plaintiff's Second Amended Complaint asserts the following six claims for relief:

- **Claim 1** – Defendant Yowell violated Plaintiff's due process rights by placing Plaintiff in lock-down for rules violations without notice and a hearing;

- **Claim 2** – Defendant Yowell violated Plaintiff's Eighth and Fourteenth Amendment rights by placing Plaintiff in housing without heat;

- **Claim 3** – Defendant Britton violated Plaintiff's due process rights by disciplining Plaintiff without notice or a hearing;

- **Claim 4** – Defendant Nestor, in his individual and official capacities, violated Plaintiff's due process rights and failed to implement a constitutional disciplinary procedure with respect to pretrial detainees;

- **Claim 5** – Defendant Adams violated Plaintiff's due process rights by placing him in disciplinary segregation without a hearing; and

- **Claim 6** – Defendant Mattson violated Plaintiff's due process rights by placing Plaintiff in lock-down without a hearing, **and** Defendant Mattson violated Plaintiff's Fourth and Fifth Amendment rights by destroying Plaintiff's legal mail.

(Doc. # 196 at 8.)

On May 9, 2017, this Court granted Defendant's Motion to Dismiss Claim 2. (Doc. # 70.) On October 12, 2018, Defendant filed the underlying Motion for Summary Judgment with respect to Plaintiff's remaining claims. (Doc. # 153.) Magistrate Judge Varholak subsequently issued the instant Recommendation on July 23, 2019.

## II. LEGAL STANDARDS

### A. REVIEW OF A RECOMMENDATION

When a magistrate judge issues a recommendation on a dispositive matter, Federal Rule of Civil Procedure 72(b)(3) requires that the district judge "determine *de novo* any part of the magistrate judge's [recommended] disposition that has been properly objected to." An objection is properly made if it is both timely and specific. *United States v. One Parcel of Real Property Known As 2121 East 30th Street*, 73 F.3d 1057, 1059 (10th Cir. 1996). In conducting its review, "[t]he district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

In the absence of a timely objection, however, "the district court may review a magistrate [judge's] report under any standard it deems appropriate." *Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991) (citing *Thomas v. Arn*, 474 U.S. 140, 150 (1985) (stating that "[i]t does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a de novo or any other standard, when neither party objects to those findings."))[1]

---

[1] The Court notes that none of the parties have objected to the Recommendation to the extent that it concludes Defendants' Motion should be granted in part and that summary judgment should enter in favor of Defendants as to the individual capacity component of Claim 4 and the Fourth and Fifth Amendment components of Claim 6. (Doc. # 196 at 46.) After reviewing the Recommendation with respect to those findings, in addition to applicable portions of the record and relevant legal authority, the Court is satisfied that the Recommendation is sound and not clearly erroneous or contrary to law. *See* Fed. R. Civ. P. 72(a). Accordingly, the Court affirms and adopts the Recommendation's findings and conclusions regarding the individual capacity component of Claim 4 and the Fourth and Fifth Amendment components of Claim 6.

### B. SUMMARY JUDGMENT STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it is essential to the proper disposition of the claim under the relevant substantive law. *Wright v. Abbot Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001). A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee, Okl.*, 118 F.3d 837, 839 (10th Cir. 1997). When reviewing motions for summary judgment, a court may not resolve issues of credibility, and must view the evidence in the light most favorable to the nonmoving party—including all reasonable inferences from that evidence. *Id*. However, conclusory statements based merely on conjecture, speculation, or subjective belief do not constitute competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

The moving party bears the initial burden of demonstrating an absence of a genuine dispute of material fact and entitlement to judgment as a matter of law. *Id*. In attempting to meet this standard, a movant who does not bear the ultimate burden of persuasion at trial does not need to disprove the other party's claims; rather, the movant need simply point the court to a lack of evidence for the other party on an essential element of that party's claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 644, 671 (10th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the movant meets its initial burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*

*v. Liberty Lobby Inc.*, 477 U.S. 242, 256 (1986). The nonmoving party may not simply rest upon its pleadings to satisfy this burden. *Id*. Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence from which a rational trier of fact could find for the nonmoving party." *Adler*, 144 F.3d at 671. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id*. Ultimately, the Court's inquiry on summary judgment is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

### III.   DISCUSSION

Defendants object to the Recommendation insofar as the Recommendation concludes that Defendants' Motion for Summary Judgment should be denied as to Plaintiff's unconstitutional punishment claims (Claims 1,3, 5, 6). Defendants also challenge Recommendation's finding that Defendants' Motion should be denied as to Plaintiff's claim against Defendant Nestor in his official capacity as Sheriff (Claim 4). The Court will analyze each objection in turn.

**A.   UNCONSTITUTIONAL PUNISHMENT CLAIMS**

In their Objection, Defendants argue that summary judgment is warranted on Plaintiff's unconstitutional punishment claims because Defendants are entitled to qualified immunity and because Plaintiff failed to exhaust his administrative remedies. *See* (Doc. # 198). The Court Disagrees.

1. <u>Qualified Immunity</u>

"[Q]ualified immunity . . . is both a defense to liability and a limited 'entitlement not to stand trial or face the other burdens of litigation.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 672 (2009) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). Public officials are entitled to qualified immunity "in civil actions that are brought against them in their individual capacities and that arise out of the performance of their duties." *Big Cats of Serenity Springs, Inc. v. Rhodes*, 843 F.3d 853, 864 (10th Cir. 2016) (quoting *Pahls v. Thomas*, 718 F.3d 1210, 1227 (10th Cir. 2013)). Once an official has raised qualified immunity as a defense, the plaintiff must show that: "(1) the public official violated the plaintiff's constitutional rights; and (2) these rights were clearly established at the time of the alleged violation." *Id.* (citation omitted). Courts may consider each factor in the "sequence [the court] deems best in light of the circumstances of the particular case." *Mink v. Knox*, 613 F.3d 995, 1000 n.4 (10th Cir. 2010). The qualified immunity standard, "by design, 'gives government officials breathing room to make reasonable but mistaken judgments about open legal questions.'" *Pahls*, 718 F.3d at 1227 (quoting *Ashcroft v. al–Kidd*, 563 U.S. 731, 743 (2011)).

   a. *Clearly established law*

Under the Fourteenth Amendment, the "[s]tate does not acquire the power to punish . . . until after it has secured a formal adjudication of guilt." *Ingraham v. Wright*, 430 U.S. 651, 671 n.40 (1977). Thus, a pretrial detainee is held to ensure his presence at trial, and the government "may subject him to the restrictions and conditions of the detention facility [only] so long as those conditions and restrictions do not amount to

punishment, or otherwise violate the Constitution." *Bell v. Wolfish*, 441 U.S. 520, 536–37 (1979). Accordingly, the Supreme Court has held that "the Fourteenth Amendment's guarantee of due process prohibits any punishment of those awaiting trial." *Blackmon v. Sutton*, 734 F.3d 1237, 1241 (10th Cir. 2013) (citing *Bell*, 441 U.S. at 535; *Youngberg v. Romeo*, 457 U.S. 307, 320–21, (1982)).

However, courts distinguish between "punitive measures that may not constitutionally be imposed prior to a determination of guilt and regulatory restraints that may." *Bell*, 441 U.S. at 537. Thus, in order to determine whether a pretrial detainee has been subjected to punishment, courts "must ask whether an expressed intent to punish on the part of the detention facility officials exists. If so, liability may attach. If not, a plaintiff may still prove unconstitutional punishment by showing that the restriction in question bears no reasonable relationship to any legitimate governmental objective." *Blackmon*, 734 F.3d at 1242. Importantly, the Tenth Circuit has held that the foregoing legal principles are "**clearly established**" for purposes of qualified immunity analysis. *Id*. (emphasis added); *see also Bloom v. Pompa*, 654 F. App'x 930, 935 (10th Cir. 2016) (noting that "it was clearly established in December 2011 that any punishment of a pretrial detainee was unconstitutional," and further noting that "[i]t was likewise clearly established that a showing of an expressed intent to punish on the part of detention officials is sufficient to demonstrate the [challenged action] is imposed for the purpose of punishment." (citations and internal quotation marks omitted)).

7

Therefore, if Defendants violated Plaintiff's Fourteenth Amendment rights by imposing a punishment on him while he was a pretrial detainee, Defendants are not entitled to qualified immunity.

        b.    *Constitutional violation*

Genuine disputes of material facts exist as to whether Defendants imposed an unconstitutional punishment on Plaintiff while Plaintiff was a pretrial detainee. Specifically, the parties dispute whether Defendants possessed the intent to punish Plaintiff. Without providing an exhaustive list, the Court notes that the following disputed facts exist as to the intent of each individual Defendant:

- **Defendant Yowell** – whether Yowell intended to punish Plaintiff by placing him on disciplinary status in light of Yowell's ambiguous explanation that the action was taken as a "sanction" for rule violations, *see* (Doc. # 157-1 at 20);

- **Defendant Britton** – whether Britton intended to punish Plaintiff by placing him in solitary living conditions after Plaintiff's position on the Jail work crew was terminated due to Plaintiff's conduct, *see* (*id*. at 52);

- **Defendant Adams** – whether Adams intended to punish Plaintiff by prolonging his time in lockdown due to Plaintiff's rule violation, *see* (*id*. at 45);

- **Defendant Mattson** – whether Mattson intended to punish Plaintiff by placing him in disciplinary segregation in response to Plaintiff's rule violation, *see* (*id*. at 47).

The Tenth Circuit has upheld the denial of summary judgment under similar circumstances. Specifically, in *Bloom v. Pompa*, the Tenth Circuit upheld the district court's denial of summary judgment where a jail employee deliberately placed a plaintiff—who was a pretrial detainee—with a violent inmate who subsequently harmed the plaintiff. 654 F. App'x at 933. The court concluded that:

8

> Taking as true the facts the district court determined a reasonable jury could find . . . [the defendant] intended to punish [the plaintiff] by subjecting him to another inmate's violence. This fact alone is sufficient to demonstrate punishment of a pretrial detainee in violation of [the plaintiff's] Fourteenth Amendment rights. We thus do not consider whether non-punitive objectives simultaneously motivated the move to [the violent inmate's] cell.

*Id*. at 934 (citations and footnote omitted). In the instant case, as in *Bloom*, a jury could reasonably find that Defendants carried out the disciplinary measures at issue with the intent to punish Plaintiff. Therefore, Defendants are not entitled to summary judgment on the basis of qualified immunity.

### 2. Administrative Exhaustion

The Prison Litigation Reform Act ("PLRA") provides that a prisoner cannot bring an action "with respect to prison conditions under section 1983 . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Jones v. Bock*, 549 U.S. 199, 211 (2007) ("[E]xhaustion is mandatory under the PLRA . . . ."). The exhaustion doctrine protects administrative agency authority and promotes efficiency. *Woodford v. Ngo*, 548 U.S. 81, 89 (2006).

Failure to exhaust under the PLRA is an affirmative defense. *Jones*, 549 U.S. at 212. Accordingly, defendants "bear the burden of asserting **and proving** that [the plaintiff] did not utilize administrative remedies." *Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir. 2011) (citing *Jones*, 549 U.S. at 212). However, once a defendant proves failure to exhaust, "the onus falls on [the plaintiff] to show that remedies were unavailable to him." *Id*.

In the instant case, Defendants failed to meet their burden of proving that Plaintiff did not utilize available administrative remedies. In the Recommendation, Magistrate Judge Varholak correctly observed the following:

> Without citation to either their Statement of Material Facts or the record evidence, Defendants contend that Plaintiff "never sought an administrative remedy after each alleged occurrence" . . . . In the Statement of Material Facts, Defendants state broadly that "Plaintiff did not exhaust remedies available to him pursuant to the Lincoln County Offender Handbook regarding his claims prior to filing this suit." In support of that conclusory proposition, however, Defendants **only cite** to Plaintiff's deposition testimony concerning the grievance he filed after Deputy Mattson allegedly destroyed his legal mail and the text of the grievance policy itself. Nor does Defendants' response to Plaintiff's denial of Defendants' Statement of Material Fact regarding Plaintiff's alleged failure to exhaust cite to any evidence concerning Plaintiff's due process claims. **Defendants thus did not cite any evidence establishing either (1) that Plaintiff failed to file grievances regarding the incidents upon which his due process claims are based or (2) that Plaintiff failed to complete the grievance process with regard to those claims**.

(Doc. # 196 at 31–32) (emphasis added) (citations omitted).

In their Objection, Defendants concede that they have not supported their affirmative defense with evidence. Defendants indicate that they "cannot reference evidence that does not exist due to Plaintiff's failure to file . . . grievances." (Doc. # 198 at 9.) That argument is not persuasive. Defendants could have met their burden of production on their affirmative defense by, for example, filing a sworn statement by a Jail official who is familiar with the Jail's records, indicating that a review of those records showed that Plaintiff did not file any grievances. Therefore, because Defendants failed to produce any substantial evidence in support of their conclusory assertions, Defendants failed to prove that Plaintiff did not exhaust administrative remedies that were available to him.

### B.   OFFICIAL CAPACITY CLAIM

Plaintiff's § 1983 official-capacity claim against Sheriff Nestor "represent[s] only another way of pleading an action against an entity of which an officer is an agent." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978); *Douglas v. Beaver Cty. Sch. Dist. Bd.*, 82 F. App'x 200, 203 (10th Cir. 2003) ("[I]n an official-capacity suit . . . the real party in interest is not the named official but rather the governmental entity itself."). Under *Monell*, a municipality "is a 'person' subject to § 1983 liability." *McDonald v. Wise*, 769 F.3d 1202, 1215 (10th Cir. 2014). Therefore, the official-capacity claim in this case is effectively a claim against Lincoln County.

#### 1.   Legal Standard

The Supreme Court has held that "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell*, 436 U.S. at 694. "[I]n other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Id*. at 691. Rather, "the government as an entity" may only be held liable "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Id*. at 694.

A municipal liability claim has three elements. Specifically, a plaintiff must show: (1) an official policy or custom, (2) causation, and (3) state of mind. *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013). Thus, to establish municipal liability, a plaintiff must first demonstrate a "municipal policy or custom," which may take one of the following forms:

> (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010) (internal quotation marks and brackets omitted).

After establishing a municipal policy or custom, a plaintiff must demonstrate "a direct causal link between the policy or custom and the injury alleged." *Id*. (internal quotation marks omitted). "Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 405 (1997). To establish causation, "the challenged policy or practice must be closely related to the violation of the plaintiff's federally protected right." *Schneider*, 717 F.3d at 770 (citation and internal quotation marks omitted). This requirement is satisfied if the plaintiff shows that "the municipality was the 'moving force' behind the injury alleged." *Id*. (quoting *Brown*, 520 U.S. at 404).

Finally, at least for claims of inadequate training, or other supervisory practices, a plaintiff "must demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences." *Brown*, 520 U.S. at 407. "'Deliberate indifference is a stringent standard of fault, requiring proof that a municipal

actor disregarded a known or obvious consequence of his action.'" *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (quoting *Brown*, 520 U.S. at 410) (internal quotation marks and brackets omitted).

"The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm." *Waller v. City & Cty. of Denver*, 932 F.3d 1277, 1284 (10th Cir. 2019) (quoting *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998)). "In most instances, notice can be established by proving the existence of a pattern of tortious conduct." *Id*. However, deliberate indifference "may be found absent a pattern of unconstitutional behavior" in "a 'narrow range of circumstances'" where "a violation of federal rights is a 'highly predictable' or 'plainly obvious' consequence of a municipality's action or inaction." *Id*. (citation omitted).

2. Analysis

Applying the foregoing principles to the instant case, the Court concludes that there is a genuine dispute of material fact regarding Plaintiff's municipal liability claim.

As a preliminary matter, Plaintiff has sufficiently identified a municipal policy or custom in the form of the Jail's Rules and Discipline Policy and Defendant Nestor's alleged failure to train Jail officials with respect to the rights of pretrial detainees. (Doc. # 157 at 18.) Importantly, the Discipline Policy authorizes Jail officials to impose "penalties" in response to rule violations without any explanation that pretrial detainees require treatment that does not constitute an unconstitutional punishment. *See* (Doc. #

13

157-1 at 40–41). The Disciplinary Policy further indicates that such penalties may be imposed even "[i]f the inmate is not considered a danger or disruption to the facility." (*Id*.) Additionally, a jury could reasonably find that insufficient training or the absence of a policy that adequately advises Jail officials about the right of pretrial detainees to be free from unconstitutional punishment was the "moving force" that caused Plaintiff's injuries that allegedly arose from being unconstitutionally punished.

Finally, there are sufficient facts in the record from which a jury could reasonably find that Defendant Nestor acted with deliberate indifference. Specifically, Defendant Nestor was aware that Jail officials were disciplining inmates—including pretrial detainees—without a disciplinary hearing. (Doc. # 157-1 at 16–17.) Additionally, it is clearly established that Jail officials cannot punish pretrial detainees. *See supra* Section III(A)(1)(a).

In fact, policymakers "know to a moral certainty that their [Jail] officers will be required" to respond to rule violations committed by pretrial detainees, so "the need to train officers in the constitutional limitations on the use of [punishment] . . . can be said to be 'so obvious,' that failure to do so could properly be characterized as 'deliberate indifference' to constitutional rights." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 n.10 (1989). Nevertheless, Defendant Nestor maintained and implemented the Jail's Disciplinary Policy and did not train Jail officials with respect to the rights of pretrial detainees in particular. Therefore, a jury could reasonably conclude that Defendant

Nestor acted—or failed to act—with deliberate indifference to the rights of pretrial detainees.[2]

## IV. CONCLUSION

Based on the foregoing, the Court AFFIRMS and ADOPTS the July 23, 2019, Recommendation of Magistrate Judge Varholak (Doc. # 196). Accordingly, it is ORDERED that:

- Defendants' Motion for Summary Judgment (Doc. # 153) is GRANTED IN PART AND DENIED IN PART.

- The Motion is GRANTED as to the individual capacity component of **Claim 4** and the Fourth and Fifth Amendment components of **Claim 6**.

- The Motion is DENIED as to **Claim 1**, **Claim 3**, the official capacity component of **Claim 4**, **Claim 5**, and the due process component of **Claim 6**.

DATED: September 19, 2019

BY THE COURT:

CHRISTINE M. ARGUELLO
United States District Judge

---

[2] The only substantive argument that Defendant Nestor raises in the Objection is that "there is no evidence of a constitutional deprivation by [the] Sherriff's employees . . . [so] Sherriff Nestor cannot be liable in his role as the senior policy maker." (Doc. # 198.) However, that argument is foreclosed by this Court's analysis that there is a genuine dispute of material fact as to whether Jail officials unconstitutionally punished Plaintiff. *See supra* Section III(A)(1)(b).